# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE BATISTA AGUILERA,<br><br>                         Petitioner,<br><br>        v.<br><br>WARDEN OF THE ADELANTO DETENTION CENTER; ERNESTO SANTACRUZ, JR, Acting Field Office Director, Enforcement and Removal Operations, Los Angeles Field Office, United States Immigration and Customs Enforcement; PAM BONDI, Attorney General, United States Department of Justice; KRISTI NOEM, Secretary, United States Department of Homeland Security; TODD LYONS, Acting Director, United States Immigration and Customs Enforcement; and DOES 1-5,<br><br>                         Defendant. | Case No. 5:26-cv-01258-SPG-JDE<br><br>**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER [ECF NO. 4]** |

Petitioner Jose Batista Aguilera ("Petitioner") is a Cuban national detained by Immigration and Customs Enforcement. *See* (ECF No. 1 ("Petition")).  He has filed a Motion for Temporary Restraining Order, (ECF No. 4 ("Motion")), challenging his continued detention under the Fifth Amendment's Due Process Clause.  Following receipt

-1-

of the Motion, the Court set a briefing schedule to consider Petitioner's request for preliminary injunctive relief. *See* (ECF No. 6). In response to the Motion, Respondents Warden, Adelanto Detention Center; Ernesto Santacruz, Jr.; Pamela Bondi; Kristi Noem; and Todd Lyons ("Respondents"), sued in their official capacities, have filed a Notice of Non-Opposition. *See* (ECF No. 8 ("Non-Opposition")). The Court has read and considered the Motion and concluded that the Motion is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the submissions, the relevant law, and the record in this case, the Court GRANTS the Motion.

## I.    BACKGROUND

According to the Petition, Petitioner entered the United States without inspection on or around March 14, 2022, and presented himself to officers from Customs and Border Patrol ("CBP"). *See* (Petition ¶ 23). CBP arrested Petitioner and placed him in removal proceedings. *See* (*id.* at 35); *see also* (*id.* ¶¶ 26–27). However, pending adjudication of his Notice to Appear, CBP released Petitioner on an Order of Release on Recognizance. *See* (*id.*). Following Petitioner's release from custody, he applied for asylum and adjustment of status under the Cuban Adjustment Act. *See* (*id.* ¶ 28). In the United States, Petitioner was granted employment authorization, married, and had a child. *See* (*id.* ¶ 29); *see also* (*id.* at 23–24). Petitioner also has a second child in the United States who is a legal permanent resident. *See* (Motion ¶ 18). Petitioner claims he "diligently complied with the terms of his parole," and attended all reporting appointments with immigration authorities, while free from custody. *See* (*id.* ¶ 31).

At some point in 2025 or 2026, Respondents detained Petitioner. *See* (Petition ¶ 15; *id.* at 51–53).[1] Petitioner claims, and Respondents do not contest, that he was detained

---

[1] In the Petition, Petitioner alleges that he was "arrested and re-detained by Respondents in 2026." (*Id.* ¶ 15). However, Petitioner has submitted exhibits that indicate he has been held in immigration custody since July 2025. *See, e.g.*, (*id.* at 52 (decision from the Board of Immigration Appeals, stating that an immigration judge denied Petitioner's request for release on bond on July 11, 2025)).

without receiving notice of the reason for his re-detention or an opportunity to be heard. *See* (*id.* ¶ 1). Petitioner has received two bond hearings while in custody. *See* (*id.* ¶ 32). During the first bond hearing, on July 11, 2025, an immigration judge ("IJ") determined that Petitioner was ineligible for bond as a noncitizen present in the United States without admission. *See* (*id.* at 51–53). Petitioner subsequently appealed the IJ's bond determination to the Board of Immigration Appeals, which affirmed the IJ's denial of bond under *Matter of Hurtado*, 29 I&N Dec. 216 (BIA 2025). *See* (*id.* at 53); *see also Matter of Hurtado*, 29 I&N Dec. at 217 (holding noncitizen present in the United States for two years without admission was subject to mandatory detention and ineligible for release on bond). On March 5, 2025, Petitioner received a second bond hearing, at which an IJ determined that Petitioner posed "a substantial flight risk" and denied bond. *See* (*id.* at 46).

While in custody, an IJ denied Petitioner's asylum application and ordered Petitioner's removal to Ecuador, under an agreement in which Ecuador agreed to accept third-country nationals deported from the United States. *See* (*id.* at 56); *see also* Agreement Between the Government of the United States of America and the Government of the Republic of Ecuador Relating to the Transfer of Third-Country National to Ecuador, 90 Fed. Reg. 51376 (Nov. 17, 2025). Petitioner appealed the IJ's order on March 5, 2026, *see* (Petition at 57), and is therefore not subject to a final order of removal, *see* (*id.* ¶ 4).

Petitioner filed his Petition on March 18, 2026, and filed the instant Motion on the same day. As noted, Respondents have filed a Notice of Non-Opposition to the Motion, writing that "Respondents do <u>not</u> oppose Petitioner's Motion for Temporary Restraining Order." (Non-Opposition at 2).

**II.   LEGAL STANDARD**

A temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs

and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). A plaintiff may secure a temporary restraining order upon establishing that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *See Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter*, 555 U.S. at 20).

"[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (citing *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

The court is permitted to consider the parties' pleadings, declarations, affidavits, and exhibits submitted when deciding an application for a temporary restraining order. *See Earth Island Inst. v. Nash*, No. 1:19-cv-01420-DAD-SAB, 2020 WL 1936701, at *6 (E.D. Cal. Apr. 21, 2020) ("[I]n considering a motion for preliminary injunction, a court may consider and rely upon declarations, affidavits, and exhibits submitted by the parties." (citations omitted)); *Harper v. Poway Unified Sch. Dist.*, 345 F. Supp. 2d 1096, 1119–20 (S.D. Cal. 2004) (considering declarations submitted by defendants to deny plaintiff's request for a preliminary injunction). "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citations omitted).

-4-

The urgency of the relief sought necessitates a prompt determination and can make it difficult to obtain admissible evidence.  *See id.*

## III.   DISCUSSION

As discussed below, Petitioner has made a sufficient showing on the *Winter* factors to merit preliminary injunctive relief.  In assessing Petitioner's showing, the Court notes Respondents have affirmatively represented that they do not oppose his request for relief.

### A.   Likelihood of Success on the Merits

Petitioner claims that Respondents violated his right to procedural due process by re-detaining him without a pre-deprivation hearing.  *See* (Motion at 15).

To establish a valid procedural due process claim, a plaintiff must, as a threshold matter, show "a deprivation of a constitutionally protected liberty or property interest." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). Petitioner argues that he had a protected liberty interest in his freedom from re-incarceration following his initial release on his own recognizance.  *See* (Motion at 11).  In a variety of contexts, the Supreme Court has repeatedly found that individuals possess a protected liberty interest against re-incarceration following even a conditional release from imprisonment.  *See, e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding protected liberty interest in revocation of parole); *Young v. Harper*, 520 U.S. 143, 147–49 (1997) (preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (probation).  As other courts within the Ninth Circuit have recognized, noncitizens living in the United States under an order that permits their conditional release from custody have a protected liberty interest. *See, e.g.*, *Banol v. Warden*, No. 5:26-CV-00529-CAS-ACCV, 2026 WL 776793, at *5 (C.D. Cal. Mar. 19, 2026); *Lucas v. LaRose*, No. 3:25-CV-02973-GPC-JLB, 2025 WL 3485163, at *5 (S.D. Cal. Dec. 4, 2025); *J.A.E.M. v. Wofford*, No. 1:25-CV-01380-KES-HBK (HC), 2025 WL 3013377, at *4 (E.D. Cal. Oct. 27, 2025).

The Ninth Circuit has assumed without deciding that the balancing test articulated in *Matthews v. Eldridge*, 424 U.S. 319 (1976), applies to procedural due process claims in the immigration context.  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir.

2022).  District courts within the Ninth Circuit have similarly applied the *Matthews* test to procedural due process claims challenging immigration detention.  *See Hogarth v. Santacruz*, No. 5:25-CV-09472-SPG-MAR, 2025 WL 3211461, at *6 (C.D. Cal. Oct. 23, 2025) (collecting cases).  In *Matthews*, the Supreme Court described three factors that courts should consider in assessing a due process claim: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.  Applying this framework to the facts of the instant case, the Court finds that Petitioner is likely to succeed on the merits of his claim that Respondents violated his right to procedural due process.

First, Petitioner has a strong liberty interest in his continued freedom on conditional parole.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  The protection afforded by the Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Id.* at 693.  In the years since Petitioner was released on parole, he received authorization to work, married, and raised a child in the United States.  *See* (Petition ¶ 29; *id.* at 23–24, 31).  Thus, as in *Morrissey*, Petitioner "relied on at least an implicit promise" that he would not be re-detained absent a change in circumstances to justify the revocation of his parole.  *See Morrissey*, 408 U.S. at 482; *see also Fernandez v. Semaia*, No. 5:25-CV-03412-SPG-MBK, 2026 WL 136229, at *5 (C.D. Cal. Jan. 13, 2026) (assessing liberty interest for petitioner released on parole).

Second, on the record presented, the process Respondents followed in re-detaining Petitioner carries a significant risk of erroneous deprivation.  Here, by releasing Petitioner on parole, the Government already determined that Petitioner "would not pose a danger to

-6-

property or persons" and "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). Respondents then re-detained Petitioner without providing notice of the reason for revoking his conditional parole, *see* (Petition ¶ 1), and have still provided no explanation for doing so, *see* (Non-Opposition). Respondents also failed to provide Petitioner with a pre-deprivation hearing, which is normally required absent "extraordinary" circumstances. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993); *see also Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("[T]he Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."). Respondents do not oppose the Motion and, therefore, have not presented argument that any such extraordinary circumstance exists.

Finally, given Respondents' Non-Opposition, the Court concludes that Respondents had no countervailing interest that would outweigh Petitioner's interest in a pre-deprivation hearing. *See Hasratyan v. Bondi*, No. 5:26-CV-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026) (collecting cases for the proposition that "there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens . . . without a pre-detention hearing"); *see also Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he government's interest in re-detaining Petitioner-Plaintiff without a hearing is 'low,' particularly in light of the fact that Petitioner-Plaintiff has long complied with his reporting requirements.").

In considering the proper remedy on Petitioner's due process claim, the Court is cognizant of the fact that an IJ has since determined that Petitioner poses a flight risk. *See* (Petition at 46). However, other courts within the Ninth Circuit have concluded that "a post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." *Nurlan Gudavasov v. David Marin*, No. 5:26-CV-00541-AH-(MBK), 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases); *see also Mumaev v. Semaia*, No. 5:25-CV-03409-FLA (MAR), 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026) (ordering petitioner's release from custody where the government failed to provide a pre-deprivation hearing, notwithstanding an

immigration judge's subsequent determination that petitioner posed a flight risk). In light of Respondents' Non-Opposition, the Court concludes that the IJ's subsequent denial of Petitioner's release on bond does not cure Respondents' failure to provide Petitioner with notice and the opportunity to be heard before revoking his release on parole.

**B.    Irreparable Harm**

Petitioner has sufficiently shown that he faces irreparable harm, absent his release from custody. "The irreparable harms imposed on anyone subject to immigration detention (or other forms of imprisonment) are self-evident." *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1037 (N.D. Cal. 2025) (internal quotation marks and alterations omitted); *see also Padilla v. Bowen*, No. 2:25-CV-10780-CAS-SK, 2025 WL 3251368, at *9 (C.D. Cal. Nov. 21, 2025) ("The Ninth Circuit has recognized the 'irreparable harms imposed on anyone subject to immigration detention'" (quoting *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)). Further, beyond pointing to the deprivation of his liberty, Petitioner has presented evidence that his detention has caused serious hardship on his family. *See Barker v. Wingo*, 407 U.S. 514, 532–33 (1972) (incarceration "has a detrimental impact on [an] individual" because "it often means loss of a job" and "disrupts family life."). While in custody, Petitioner's wife gave birth to their infant son, and she has had to take care of their son without Petitioner's help. *See* (Petition at 23). Petitioner's other son, who is now eight, has been "significantly affected" by his absence, with one of his teachers reporting that he has "seem[ed] distracted, unfocused, and emotionally withdrawn" following Petitioner's detention. *See* (*id.* at 31). The mothers of both children also claim that they have suffered financial hardship in Petitioner's absence. *See* (*id.* at 23, 31).

**C.    Balance of Equities and Public Interest**

When the government is the nonmoving party on a TRO application, the Court's consideration of the balance of the equities and public interest merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). As discussed above, Petitioner faces considerable hardship as a result of his continued detention. Furthermore, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002

(9th Cir. 2012).  Respondents have not presented argument as to a countervailing interest.  *See* (Non-Opposition).  Therefore, the Court finds that all three of the *Winter* factors weigh in Petitioner's favor and GRANTS the Motion.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS the Motion and ORDERS as follows:

1.    Respondents are ORDERED to release Petitioner immediately;

2.    Respondents are temporarily ENJOINED AND RESTRAINED from re-detaining Petitioner, unless they demonstrate during a pre-deprivation bond hearing before a neutral decisionmaker that there has been a material change in circumstances justifying Petitioner's re-detention;

3.    Respondents are ORDERED TO SHOW CAUSE in writing no later than seven (7) days from the date of this Order why the Court should not issue a preliminary injunction.  Petitioner may file a Reply no later than ten (10) days from the date of this Order.  The Court sets a hearing on whether a preliminary injunction should issue for Wednesday, April 8, 2026, at 10:00 a.m.  The Court will accept a stipulated briefing schedule extending these dates on the condition that the parties agree to an extension of the TRO.

**IT IS SO ORDERED.**

DATED: March 25, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

-9-